UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIC COLLINS,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-797

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Eric Collins filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On June 7, 2004, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB) alleging a disability onset date of March 15, 2004, due to cirrhosis of the liver and jaundice. (Tr. 75-77, 81, 223-225). He was 31 years old at the time of his alleged disability. (Tr. 112, 395). On July 23, 2004, after Plaintiff's claims were denied initially and upon reconsideration (Tr. 47-57, 226-34); he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Tr. 58). On

March 17, 2006, ALJ Samuel Rodner ("ALJ Rodner") dismissed the hearing request. (Tr. 44, 235-237). The Appeals Council vacated ALJ Rodner's decision and remanded the matter for further proceedings. (Tr. 238-240). On September 16, 2008, and May 19, 2009, evidentiary hearings were held, at which Plaintiff was represented by counsel. (Tr. 392-421, 422-435). At both hearings, ALJ William H. Gitlow ("ALJ Gitlow") heard testimony from Plaintiff. Melissa Glannon, a vocational expert, testified at the second hearing.

On June 3, 2009, ALJ Gitlow entered his decision denying Plaintiff's SSI and DIB applications. (Tr. 21-31). The Appeals Council denied his request for review. (Tr. 12-15). Therefore, ALJ Gitlow's decision stands as the Defendant's final determination.

ALJ Gitlow's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity since March 15, 2004, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic back pain syndrome, degenerative joint disease of the knees, and alcoholic liver disease (20 CFR 404.1520(c) and 416.920(c)).

   ……………………

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

   ……………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has had, at all relevant times, the following residual functional

2

      capacity: lift/carry no more than twenty-five pounds maximum occasionally and ten pounds maximum frequently; stand and/or walk no more than six hours total out of an eight-hour workday, one hour without interruption; only occasionally climb, balance, stoop, kneel, crouch, and crawl; no climbing of ladders, ropes, or scaffolds; and should avoid work on slanted or uneven work surfaces.

      ……………………

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

      ……………………

7.     The claimant was born on August 28, 1972 and was 31 years old on the alleged disability onset date, which is defined in the regulations as a 'younger individual age 18-49' (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

      ……………………

9.     Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)

      ……………………

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24-31). Thus, ALJ Gitlow concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB. (*Id.*).

3

On appeal to this Court, Plaintiff maintains that ALJ Gitlow erred by: 1) improperly dismissing the findings of treating physicians; 2) failing to consider the combined impact of Plaintiff's impairments; and 3) inadequately assessing Plaintiff's pain and credibility. (Doc. 7).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York,* 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen,* 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the Court should consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v.*

*Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimants impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimants impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. §404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy.  42 U.S.C. §423(d)(1)(A).  In this case, Plaintiff alleges that the three identified errors at the fifth

step of the sequential analysis require this Court to reverse the Commissioner's decision.

### B.  The ALJ's rejection of Treating Physician's Opinions

In his first assignment of error, Plaintiff complains that ALJ Gitlow improperly rejected the findings and conclusions of a treating primary care physician, Jim Meadows, M.D. (Dr. Meadows) and improperly relied on the professional opinions given by medical expert, Robert Marshall, M.D. ("Dr. Marshall").  20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.*  (emphasis added).  *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).  Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection."  *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527(d)(2).  Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).

On March 25, 2009, Dr. Meadows, a family practitioner, completed a Basic Medical Form for the local county Department of Job & Family Services.  (Tr. 388-389).

6

On that form, Dr. Meadows opined that Plaintiff could not walk due to knee pain and recent hernia repair surgery. (Tr. 388). He further reported that Plaintiff could not lift anything due to said surgery. (*Id.*). Dr. Meadows found Plaintiff markedly impaired in pushing/pulling, bending, and repetitive foot movements. (*Id.*). Plaintiff was moderately impaired in reaching and handling. (*Id.*). Plaintiff could not stand on his feet or do repetitive lifting movements due to knee pain and instability. (*Id.*).

In his decision, ALJ Gitlow rejected Dr. Meadows' negative assessment of Plaintiff's functional abilities:

> [W]hile the undersigned has fully considered Dr. Meadows' assessment and opinions, such has been rejected for numerous reasons. First, it is noted that Dr. Meadows opinions were rendered shortly after the claimant's recent hernia surgery and limits at that time from surgery should resolve. Second, the doctor provided no explanation as to why the claimant would be so greatly limited with regard to the claimant's ability to sit secondary to his left knee. Third, there is no explanation why the claimant would have reaching and handling limits from the record as noted. Finally, I find that Dr. Meadows' opinions are further inconsistent with the other opinion evidence of record, including Dr. Marshall, and are not wholly supported by objective clinical findings.

(Tr. 27). Plaintiff contends that the limitations found by Dr. Meadows were supported by ample objective evidence, including the testimony of vocational expert, Melissa Glannon, who testified that based on Dr. Meadows' limitations, Plaintiff would not be able to hold a job on a sustained basis. (Tr. 434). However, although the opinions of treating physicians must be considered, ultimately the determination of a claimant's residual functional capacity (RFC) is "reserved to the Commissioner." 20 C.F.R. §404.1527(d)(2), §1527(e)(2).

In rejecting the limitations assessed by Dr. Meadows, ALJ Gitlow explained that the opinion of Dr. Meadows providing that any permanent work-related restrictions are

7

warranted is inconsistent with the record as a whole. (*See* Tr. 27). ALJ Gitlow went on to point out that repeated examinations by treating physicians offered very few objective clinical findings to support the claimant's alleged level of pain. (Tr. 27-29). By way of example, the ALJ provided that Plaintiff, with his impairments continued to travel, including trips to Germany in 2008 for a fifteen-day period and to Louisville, Kentucky for an overnight stay in May 2008. (Tr. 26). The ALJ's rejection of Dr. Meadows' assessment satisfies the "good reasons" requirement. The extreme limitations found by Dr. Meadows are not supported by objective medical evidence. Rather, I conclude from a review of the same medical records that substantial evidence supports ALJ Gitlow's assessment.

The record does reflect a diagnosis of chronic back pain syndrome, degenerative joint disease of the knee, and alcoholic liver disease, however, the record does not support Dr. Meadows' assessment of severe limitations. A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services,* 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009)*.*

Plaintiff further argues that ALJ Gitlow improperly rejected Dr. Meadows' assessment of Plaintiff's functional abilities by relying on the requested medical expert, Dr. Marshall, and his opinions because he "never actually physically evaluated Mr. Collins." (*See* Doc. 7 at 9). Dr. Marshall reviewed the record in its entirety, and based upon his professional knowledge,[1] provided his opinion on Plaintiff's impairments on

---

[1] Dr. Marshall, as a consulting physician, was consulted specifically by ALJ Gitlow because of his expertise in disability evaluations. (Tr. 27).

8

February 19, 2009. (Tr. 372-380). Dr. Marshall opined that Plaintiff could lift and/or carry up to twenty-five pounds occasionally; could stand and/or walk six hours in an eight-hour workday, and without interruption, one-two hours at a time; could sit without limitation; and could occasionally balance, crouch, kneel, and crawl. (Tr. 376-377).

In regards to Plaintiff's liver, Dr. Marshall opined that it was not a significant problem despite the Plaintiff's allegations. (Tr. 374). Dr. Marshall noted that while early findings of liver enlargement, elevated bile pigment, increased liver enzymes, and macrocytosis[2] were noted, since achieving sobriety in early 2006, liver functioning has been essentially within normal limits consistent with his abstinence from alcohol with only evidence of some fatty changes on a CT scan. (Tr. 174, 374). Dr. Marshall stated that Dr. Watson-Gray, in a report written in 2004, "jumped the gun" in describing Plaintiff's condition as "liver failure" even to the extent of placing him on a list for a liver transplant. (Tr. 374). Moreover, it is noted that Plaintiff has not undergone a liver biopsy, and according to Dr. Marshall, did not need one. (*Id.*).

As of June 2004, just shortly after diagnosis, Plaintiff was noted to be "feeling better" and his skin less jaundiced. (Tr. 143). Dr. Watson-Gray's records reflect that Plaintiff's condition remained stable with normal laboratory studies since early 2006, the time he reportedly stopped drinking. (Tr. 136-148, 213-222). Further, when consulting physician, Dr. Sargios, an internal medicine and gastroenterology specialist, examined Plaintiff on March 1, 2007, during a follow-up examination, he noted that Plaintiff was "feeling good," that he was "recovering," and that the liver function test ("LFT") done in April 2006 was normal. (Tr. 297). Dr. Sargios observed no evidence of

---

[2] Macrocytosis is a term used to describe red blood cells that are larger than normal. Common causes of macrocytosis include: liver disease and alcoholism. Ruben A. Mesa, M.D., *Macrocytosis: What causes it,* Mayo Clinic, (February 28, 2011, 3:54 PM), http://www.mayoclinic.com/health/macrocytosis/ANO1287.

hepatosplenomegaly[3], palpable masses, ascites,[4] or other abnormality, and indicated that no regular follow-up examinations would be needed. (Tr. 297, 300).

In regards to Plaintiff's knee impairment, Dr. Marshall noted that injective therapies were provided to Plaintiff when he traveled overseas to Germany for a fifteen-day period and that Plaintiff had arthroscopic surgery on the left knee in October 2008. (Tr. 374). It has been indicated that this surgery was successful and no additional evidence was submitted to support a further degree of work-related restrictions secondary to this condition. (Tr. 370). ALJ Gitlow noted that there was no indication that Plaintiff had any further significant knee problems postoperatively with regard to catching, popping, locking or giving way of the affected knee joint resulting in the need for an ambulatory assistive device, and the degree of sitting standing, and walking limitations Plaintiff describes are not supported by objective evidence. (Tr. 28).

In regards to his chronic back pain, Dr. Marshall pointed out that Plaintiff's physical therapist, Joe Isaac, indicated upon completion of services on May 5, 2006, that he had "progressed very well" meeting most of his treatment goals. (Tr. 318, 374). In addition, Plaintiff failed to point to any objective medical evidence, such as clinical records, that show he is not neurologically intact or has an uneven gait, that would support his claim of disabling back pain. Further, there has been no evidence submitted to show any more aggressive forms of treatment with regard to his back condition, and

---

[3] Hepatosplenomegaly is defined as the enlargement of the liver and spleen. The word "hepatosplenomegaly" is compounded from Greek roots: "hepato" from "hepatikos" (of the liver) + "spleno" from "spleen" (the spleen) + "megaly" from "megas" (big or great) = bigness of liver and spleen. *Definition of Hepatosplenomegaly,* Med Terms.com (February 28, 2011, 3:33 P.M), http://www.medterms.com/script/main/art.asp?articlekey=3716.

[4] Ascites is defined as excess fluid in the space between the tissues lining the abdomen and abdominal organs (the peritoneal cavity). A person with ascites usually has severe liver disease. Ascites due to liver disease is caused by high pressure in the blood vessels of the liver (portal hypertension). *Definition of Portal hypertension – ascites,* PubMed Health.com (February 28, 2011, 2:03 P.M.) http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001331.

10

lumbar flexion has been noted to be within functional limits.  (Tr. 318, 337, 374).

In addition, ALJ Gitlow explains that the extreme limitations Dr. Meadows detailed in his 2009 assessment were inconsistent with statements made by Plaintiff that he was able to mow the grass, rake, visit neighbors and family members, handle finances, attend mass on Sundays lasting, help his father with the household chores, occasionally do laundry, perform his knee exercises, and fish while at his family's cabin. (Tr. 409, 414-416, 420).  See 20 C.F.R. §404.1527(d)(4) ("*Consistency.*"  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Even if the Court were to assume that Dr. Meadows' opinions were consistent with other record evidence, it is not necessarily enough to warrant reversal; "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  As ALJ Gitlow explained, Dr. Meadows opinions were rendered shortly after Plaintiff's hernia surgery, there was no explanation as to why Plaintiff would be so greatly limited with regard to his ability to sit, and there was no explanation as to why Plaintiff would have reaching and handling limits.  (Tr. 27).  See 20 C.F.R. §404.1527(d)(3) ("the better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Dr. Meadows simply checked a box indicating that Plaintiff's ability to sit was affected, and summarily stated, "can't due to knee pain and hernia repair."  (Tr. 388).  He also checked boxes that Plaintiff's handling and reaching abilities were "moderately limited," but gave no reasons why he believed this to be so. (*Id.*).  Therefore, for the reasons stated above, Plaintiff's first argument does not have

11

merit.

### C. The Combined Impact of Impairments

Plaintiff argues that ALJ Gitlow failed to adequately consider all of Plaintiff's limitations from his various impairments, when deciding this case. Specifically, Plaintiff alleges that although ALJ Gitlow considered Plaintiff's impairments separately, he did not properly analyze the combined impact of his alcoholic liver disease, degenerative joint disease of the knee and chronic back pain on Plaintiff's total body condition. (Doc. 7 at 10).

While it is clear the ALJ must consider the combined effect of Plaintiff's impairments in assessing his eligibility for disability benefits, *see Barney v. Secretary of Health and Human Services,* 743 F.2d 448, 453 (6th Cir. 1984), there is substantial evidence in the record establishing ALJ Gitlow did so in this case. As mentioned above, ALJ Gitlow found that Plaintiff suffered from multiple impairments including, "chronic back pain syndrome, degenerative joint disease of the knee, and alcoholic liver disease," and then listed all the medical evidence which established Plaintiff's impairments. (Tr. at 24). After summarizing the evidence, ALJ Gitlow found that Plaintiff's treatment history and complaints in "these areas" were adequately documented by the record, establishing them as "severe" impairments. (*Id*). Again, ALJ Gitlow's consideration of multiple severe impairments and his use of the plural "impairments" strongly indicates his consideration of Plaintiff's impairments in combination.

ALJ Gitlow also determined that Plaintiff "did not have an impairment or *combination of impairments* that met or medically equaled one of the listed

12

impairments…" (Tr. 25)(emphasis added). ALJ Gitlow then concluded that "[a]fter reviewing all of the evidence, including the medical records, and considering the interactive and cumulative effects of all medically determinable impairments, including any impairments that are "severe" and/or "non-severe," the undersigned finds that the claimant does not have a combination of impairments that meet or medically equal any listed impairment…" *Id.* This conclusion establishes that ALJ Gitlow considered the combined impact of Plaintiff's impairments on his work abilities not only because ALJ Gitlow plainly referred to the "combination of impairments" – plural – but also because he reached this conclusion as part of his consideration of the medical evidence of record concerning Plaintiff's multiple impairments, together with Plaintiff's testimony during the administrative hearing. *See* Tr. 24-25; *see also Foster,* 853 F.2d at 490; *cf. Loy v. Secretary of Health and Human Services,* 901 F.2d 1306, 1310 (6th Cir. 1990)(per curiam)(ALJ's specific reference to the claimant's "combination of impairments" satisfied duty to consider the combined impact of impairments); *Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987)(per curiam)(same). For these reasons, the undersigned finds no merit to Plaintiff's second assignment of error.

### D. Credibility Assessment and Evaluation of Pain

Plaintiff's third statement of error finds fault with ALJ Gitlow's conclusion that his testimony was not entirely credible. Specifically, Plaintiff claims that ALJ Gitlow failed to consider all the factors listed in 20 C.F.R. §404.1529. With respect to his complaints of abdominal, knee and back pain, Plaintiff alleges that ALJ Gitlow failed to adequately consider Dr. Meadows' evaluation and his opinions as to limitations that should be

13

imposed. (Tr. 388-389). He argues that the medical records reflect several diagnoses that would be expected to produce significant pain. (Doc. 7 at 11). In addition, Plaintiff contends that Dr. Meadows' diagnoses support his report of fatigue, and instability that causes him difficulty in doing simple tasks for extended periods. (Doc. 7 at 11).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001). Thus, it can be proper for an ALJ to discount the claimant's testimony. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

In this matter, ALJ Gitlow noted various factors in his decision which caused him to question Plaintiff's credibility. For instance, he noted that Plaintiff has not always been fully compliant with treatment – refusing and declining services, checking out of the hospital against medical advice, and even drinking alcohol on occasion despite being advised that complete abstinence was crucial to maintain good health. (Tr. 162, 170, 173, 183-184, 187, 278, 289-292). He has tested positive for illegal drugs, (i.e.,

14

marijuana), demonstrated drug-seeking behaviors (i.e., specifically requesting narcotics), and he reported engaging in a wide variety of activities which appear inconsistent with a totally debilitated individual such as cleaning, mowing grass, raking, weed eating, doing laundry, shopping, driving, fishing, and traveling overseas. (Tr. 162, 282, 397, 409, 414-418, 420). ALJ Gitlow also noted that Plaintiff related that he remains independent in caring for his personal care needs despite his allegations of severe weakness and fatigue. (Tr. 29, 409, 414).

ALJ Gitlow found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," (Tr. 27), and that the evidence provides sufficient objective support to afford partial credibility with regard to his musculoskeletal complaints. (Tr. 24). However, in reviewing Plaintiff's multiple RFC assessments, ALJ Gitlow also found that Plaintiff's statements concerning the severity, intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with said assessments. (Tr. 27).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Here, ALJ Gitlow noted that objective tests including MRI and liver functioning have showed completely normal results. (Tr. 28). In addition, ALJ Gitlow specifically recognized that there was no evidence of documented nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (Tr. 25).

Therefore, because ALJ Gitlow found inconsistencies between the objective medical evidence and Plaintiff's testimony about the extent of his pain and limitations, it

15

was permissible for him to discredit Plaintiff's testimony about the severity of his symptoms. As a result, given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports ALJ Gitlow's decision to discredit Plaintiff's statements about the severity of his symptoms.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be closed

*s/Stephanie K. Bowman*
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ERIC COLLINS,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-797

Dlott, J.
Bowman, M.J.

## **NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).